POPE, ET ALS. CLAIMANTS, &C. v. MURRAY.

1. Four spars were *hired* for an indefinite period, to aid in raising a steam-boat that was sunk, for the use of each, the owner of the boat was to pay one dollar a day, and if they were "lost or injured," he was to pay at the rate of twenty-five dollars each, for three of them, and ten for the fourth : *Held*, that the terms "lost or injured," were to be understood in a popular sense, and although they were not *actually lost or injured*, the owner of the boat might, if he retained them, upon paying eighty-five dollars, the price agreed, avoid the payment of hire for the use of spars.

WRIT of error to the County Court of Mobile.

This was a proceeding by libel, under the statute, at the suit of the defendant in error against the steamboat W. W. Fry, her

tackle, apparel, &c. It is alleged, that since the first day of July, 1842, the libellant hired to that boat, while she was on the internal waters of this State, and for her use and on her credit, four spars, to be used in raising her from the bottom of the river, where she had sunk, at the rate of twenty-four dollars *per week;* that these spars were kept in the use and service of the boat for the space of six months and twelve days, and were not delivered to the libellant, although he has often demanded them; that they are valued at eighty-five dollars; and that an account of the particulars of the libellant's demand is annexed, the aggregate amount of which is seven hundred and nine dollars, &c.

Process was regularly issued against the W. W. Fry, under which the boat, with her tackle, apparel, &c., were seized by the sheriff of Mobile; whereupon, the plaintiffs in error entered into a stipulation, conditioned to deliver the W. W. Fry to the sheriff of Mobile, on, &c., or to pay and satisfy the decree that should be rendered on the libel. The claimants denied on oath the allegations of the libel; the cause was submitted to a jury on the proofs of the respective parties, and a verdict being returned for the libellant for the sum of one hundred and seventy-nine dollars, a judgment was rendered accordingly. On the trial, the claimants excepted to the ruling of the judge. The libellant proved, that the steamboat Fry, on her passage from Montgomery to Mobile, sunk in the Alabama river; that Pope, the owner, through King, his agent, applied to the libellant for four spars to aid in raising her; that King and Murray made the following agreement, viz: that King should have the spars for the purpose for which he wanted them, but the time when he was to return them was not distinctly stated, though he said he should need them from a week to twelve days. For the use of the spars, the owner of the boat was to pay a dollar per day for each spar, and if they were lost or injured, Pope was to pay twenty-five dollars for three, and ten dollars for one—in all eighty-five dollars. It did not appear that the spars were injured or lost, but they had never been returned to the libellant. The only evidence on this point, was that of King, who testified that Pope said, on leaving the boat, let them remain there, as he should want them again in attempting to raise her. The court charged the jury, that it was a material inquiry whether there was a sale or hiring of the spars; if

there was no sale of them, the plaintiff should recover the value, together with hire, according to the contract. ·

DARGAN, for the plaintiffs in error.
No counsel appeared for the defendant.

COLLIER, C. J.—Wherever the literal interpretation of a contract will defeat the object of the parties, resort must be had to construction. In expounding agreements, we must conform, as nearly as the rules of law will allow, to the apparent intention of the parties. Again: in the construction of all instruments, the court must accord to a particular expression a controlling force, but the intention must be gathered from the whole writing; unless it be manifest that its author intended otherwise. The undertaking of the boat was to pay one dollar a day for the use of each of the spars; and if they were lost or injured, to pay eighty-five dollars, the price agreed for the four. The obvious meaning of the parties was, that the owner should pay the stipulated hire for the spars, unless he failed to return them; in that event, he was to pay the sum which the parties had determined to be their value. The terms, *lost* or *injured*, are not to be construed in their strictest sense, and as excluding every other cause which may have prevented their return, but they are to be understood as having been used to express the idea of a failure to return the spars, without reference to any particular cause therefor. The subject matter and nature of the contract do not warrant the conclusion, that these words were intended to control the meaning of the parties, and that the sentence in which they are found should be literally interpreted. The popular sense is that in which we must suppose the parties intended to express themselves, without any special regard to etymology.

It was not intended that, in addition to the hire, (as it is called,) the spars themselves should be paid for, but the clear inference is, that if they were not returned, the property in them vested in the owner of the boat from the time the plaintiff parted with their possession, and by paying the stipulated price, the liability to pay the hire was extinguished.

In the view taken of the contract, it was not necessary for the jury to have inquired whether it was a hiring or a sale—the legal effect of it might be either the one or the other, as the owner of

the boat chose to treat it. In referring the inquiry to the jury upon this point, without informing them what was a sale and what a hiring, it may be questioned whether the county court did not err. But what has been already said, makes unnecessary the examination of the charge in this respect; and we will only add, that the judgment is reversed, and the cause remanded.